**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GERALD ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 05-0393-WS-M** |
| | ) | |
| **JOHN GREENE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (doc. 2). The Motion was accompanied by a brief (doc. 3), as well as exhibits from the underlying state court file. On July 6, 2005, the Court entered an Order (doc. 4) directing plaintiff to respond to the Motion on or before July 22, 2005. Plaintiff (who is represented by counsel) neither submitted a response nor requested an extension prior to that deadline. Nonetheless, three days after the deadline, plaintiff's counsel filed a Motion to Enlarge Time (doc. 7) requesting an extension through July 28, 2005 in which to respond to the pending dispositive motion. Despite plaintiff's failure to explain why he had not timely sought an extension, the Court granted the request in an Order (doc. 8) setting a new deadline of July 28, 2005 for plaintiff's opposition brief. That deadline passed nearly three weeks ago, but plaintiff has failed to submit any response to the Motion to Dismiss or to request additional time. The response deadline having long since expired, the Motion is now ripe for disposition.[1]

**I.      Background.**

On August 4, 2004, plaintiff Gerald Anderson filed a lawsuit against defendant John Greene and fictitious parties in the Circuit Court of Monroe County, Alabama. The Complaint alleges that

---

[1]      Defendants have requested oral argument. (Motion, ¶ 3.) After careful review of the materials submitted, and all parts of the court file deemed relevant, the Court is of the opinion that oral argument would not be of material assistance in resolving the pending motion. As such, the request for oral argument is **denied**. *See* Local Rule 7.3 (providing that "the court may in its discretion rule on any motion without oral argument").

Greene, who was at all material times a Conecuh County Deputy Sheriff, committed various state-law torts against Anderson in Monroe County, some five miles outside of Conecuh County. In particular, the Complaint asserts that in September 2003, Deputy Greene went into plaintiff's residence without permission, slapped plaintiff "in a rude, hostile and willful manner," "interrogated him without any probable cause," and "took pictures and serial numbers of televisions and guns" belonging to plaintiff. (Complaint, ¶¶ 6, 10, 14, 18.) Based on these allegations, the Complaint enumerates claims for assault and battery, false imprisonment, invasion of privacy and outrage.

Deputy Greene filed a motion to dismiss or for summary judgment on grounds of immunity and failure to state a proper claim of outrage. On June 8, 2005, three critical developments transpired. In chronological order, they occurred as follows: (a) plaintiff filed a motion seeking leave to amend his complaint to name Conecuh County Sheriff Tracey Hawsey as an additional defendant and to bring new causes of action under 42 U.S.C. §§ 1981(a) and 1983; (b) Circuit Judge Sam Welch granted Deputy Greene's motion for summary judgment, which would dispose of this case in its entirety; and (c) after doing so, Judge Welch granted plaintiff leave to file an amended complaint.

The Amended Complaint purports to name Sheriff Hawsey as an additional defendant and to assert three new causes of action, to-wit: (i) a conclusory claim that defendants "violated the constitutional and/or statutory [sic] afforded the Plaintiff under the Fourteenth Amendment and/or 42 U.S.C. § 1983 and/or 42 U.S.C. § 1981(a)" (Amended Complaint, ¶ 23); (ii) a negligent supervision claim against Sheriff Hawsey; and (iii) a claim against both defendants for violation of Article 1, Section 6, of the Constitution of Alabama, guaranteeing the right to due process of law.

Upon filing of the Amended Complaint, defendants promptly removed this action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441 on the ground that federal courts have original jurisdiction over the § 1983 and § 1981 claims. Concurrently with their removal petition, defendants filed their Motion to Dismiss.

## II.      Legal Standard for Motion to Dismiss.

On a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969). A

motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed.R.Civ.P. Moreover, the Court must, "at this stage of the litigation, . . . accept [plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Stephens v. HHS*, 901 F.2d 1571, 1573 (11th Cir. 1990); *cf. South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) (conclusory allegations and unwarranted deductions of fact are not deemed true on a motion to dismiss). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. A plaintiff must meet only an "exceedingly low" threshold to survive a Rule 12(b)(6) motion. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).

**III.    Analysis.**

By its terms, the Motion to Dismiss seeks dismissal of the Amended Complaint on the following theories: (a) res judicata; (b) lack of substantive rights conferred by § 1983; (c) lack of factual allegations to support § 1981(a) claim; (d) failure of § 1983 claim to state a claim against Sheriff Hawsey; (e) qualified immunity as to § 1983 claims; and (f) sovereign immunity on state law claims. The Court will consider each of these grounds in turn, but must first assess the legal consequences (if any) of plaintiff's failure to respond to the Motion to Dismiss within the temporal parameters of the undersigned's orders.

> **A.    *Effect of Plaintiff's Failure to Respond.***

As set forth *supra*, plaintiff (who is represented by counsel) neglected to respond to the Motion to Dismiss, even after being granted a short extension of time in which to do so. Under the circumstances, the Court can only conclude that the Motion is unopposed, and that plaintiff has waived the right to be heard in opposition to same.

-3-

A number of federal courts have declared that a motion to dismiss may be properly granted under these circumstances without reaching the merits, based on the theory that (i) plaintiff's failure to respond operates as a concession that the motion should be granted, or (ii) dismissal is appropriate as a sanction for failure to prosecute or to obey the court's orders.  *See Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) (finding no error where district court granted motion to dismiss based on reasoning that plaintiffs' failure to respond to motion within prescribed time renders motion conceded); *Pomerleau v. West Springfield Public Schools*, 362 F.3d 143, 145 (1ˢᵗ Cir. 2004) (citing authority for proposition that court may treat failure to respond to motion to dismiss as procedural default where court had ordered response, unless granting motion would offend equity or conflict with federal rules); *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (explaining that if a party represented by counsel fails to respond to a motion to dismiss, district court may treat motion as unopposed and subject to dismissal without merits analysis).

However, these authorities are not unanimous.  *See Issa v. Comp USA*, 354 F.3d 1174, 1178 (10ᵗʰ Cir. 2003) ("even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted"); *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 213 (5ᵗʰ Cir. 1976) (holding that plaintiff's initial failure to respond to motion to dismiss and subsequent failure to respond after express order to do so within ten days were insufficient grounds for dismissal).

After careful review of the foregoing authorities and with due regard for *Boazman*'s status as binding authority, the Court deems it proper to consider the Motion to Dismiss on the merits, notwithstanding Anderson's failure to respond.  That said, "the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her." *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1ˢᵗ Cir. 1990); *see also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11ᵗʰ Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11ᵗʰ Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that

could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf"). Accordingly, Anderson's decision not to proffer argument or authority in response to the Motion is at his peril.

### B.      Res Judicata Defense.

As an initial position, defendants contend that the Amended Complaint should be barred on res judicata grounds because it was not filed until after the state court had granted summary judgment against plaintiff as to all claims in the Complaint. Defendants maintain that the Monroe County decision granting summary judgment acts as res judicata and precludes Anderson from proceeding on the Amended Complaint.

The general principles of res judicata are well established and uncontroversial. "Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). Under Alabama law,[2] res judicata is proper if the party invoking the doctrine establishes the following four elements: "(1) a prior judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) substantially the same parties involved in the prior case are involved in the current case; and (4) the same cause of action presented in both suits." *Ex parte Jefferson County*, 656 So.2d 382, 384-85 (Ala.1995); *see also Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269 (11th Cir. 2002) ("A party seeking to invoke res judicata must show that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final;

---

[2]      The determination of whether to give preclusive effect to a state court judgment is made by reference to that state's res judicata law. *See, e.g., Agripost, Inc. v. Miami-Dade County, ex rel. Manager*, 195 F.3d 1225, 1229 n.7 (11th Cir. 1999) ("In considering whether to give preclusive effect to state court judgments, federal courts must apply that state's law...."); *Thompson v. Smith*, 52 F. Supp.2d 1364, 1368 (M.D. Ala. 1999) ("A federal court must give preclusive effect to state-court decisions whenever the court of the State from which the judgment emerged would do so.") (citation omitted). Thus, the determination of whether and to what extent the Monroe County rulings will be afforded preclusive effect here is governed by Alabama law. That said, given the considerable overlap of federal and Alabama state law in this area, the Court derives guidance from federal decisional authority, as well.

(3) involved the same parties or their privies; and (4) involved the same causes of action.").  If those elements are present, then any claim that was or could have been adjudicated in the prior action is barred.  *See Equity Resources Management, Inc. v. Vinson*, 723 So.2d 634, 636 (Ala. 1998); *Hughes v. Martin*, 533 So.2d 188, 190 (Ala. 1988).

      The glaring defect with application of res judicata principles in these circumstances concerns the requirement that there be a final prior judgment.  That prerequisite is plainly lacking here.  Judge Welch could not have intended his summary judgment ruling to be a final judgment on the merits because immediately after making that ruling he authorized plaintiff to file an amended complaint.  Had the summary judgment ruling been a dismissal with prejudice, the state court judge could not have granted leave to amend because the case would have been concluded.  The only reasonable interpretation that harmonizes Judge Welch's two decisions is that he did not intend the judgment to be a final dismissal with prejudice, but that he simply granted summary judgment with leave to file an amended complaint.  Any other construction of those two rulings would disregard or disfigure one or the other of them, which this Court will not do.

      Under the clear law of this Circuit, "[a] dismissal without prejudice is not an adjudication on the merits and thus does not have a res judicata effect."  *Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003); *see also Buck Creek Industries, Inc. v. Alcon Const., Inc.*, 631 F.2d 75, 78 n.5 (5th Cir. 1980) (explaining that if prior dismissal is without prejudice, district court could simply brush aside res judicata defense because prior order did not amount to dismissal on the merits); *Johnson v. Eli Lilly and Co.*, 689 F. Supp. 170, 175 (W.D.N.Y. 1988) ("a judgment rendered 'without prejudice' is typically considered not to be on the merits, and insufficient to support the application of res judicata").  Because there was no final dismissal with prejudice in the state court action, res judicata principles are inapplicable here and do not operate to bar the Amended Complaint.  Nonetheless, the Court recognizes that all four counts of the Complaint were dismissed in state court; thus, the only pending causes of action at this time are Counts Five, Six and Seven of the Amended Complaint.  Each of these claims will be considered separately.

### C.     The § 1981(a) Claim.

Count Five of the Amended Complaint purports to state a cause of action under 42 U.S.C. § 1981(a).  That statute provides, in pertinent part, that all persons "have the same right ... to make and enforce contracts, to sue, be parties, give evidence, to the full benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  *Id.*  To state a claim under § 1981, a plaintiff must allege facts tending to show that he is a member of a racial minority, that the defendant intended to discriminate on the basis of race and that the discrimination concerned one or more activities enumerated in the statute.  *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004).

Anderson's Amended Complaint sets forth no factual allegations tending to show that any of the § 1981 factors are present.  Indeed, there are not even conclusory allegations, much less reasonably pled facts, asserting that Anderson belongs to a minority, that defendants intended to discriminate against him on the basis of his race, or that such discrimination concerned enumerated activities in § 1981.  Review of the pleadings offers no inkling as to the factual basis of Anderson's purported § 1981 claim.  Such pleading is inadequate, as a matter of law.  As the Eleventh Circuit has explained, "while a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  *Jackson*, 372 F.3d at 1271 (citation omitted).  Indeed, "notice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests."  *Id.*  Wholly conclusory allegations of law are insufficient to meet even liberal standards of federal pleading.  *Id.* at 1273.  Yet Anderson has endeavored to bring a § 1981 claim against defendants based on nothing more than a cursory citation to the statute.  Such a showing falls well short of even the most generous reading of pleading standards under the Federal Rules of Civil Procedure.  Accordingly, defendants' Motion to Dismiss is due to be, and the same hereby is, **granted** as to plaintiff's § 1981 cause of action set fourth in Count Five.

### D.     The § 1983 Claim.

As to the portion of Count Five alleging a violation of 42 U.S.C. § 1983, defendants offer three arguments in favor of dismissal.  First, they contend that the § 1983 claim should be dismissed because

that statute does not confer substantive rights.  Second, they assert that Count Five fails to state a claim for relief as against Sheriff Hawsey.  Third, they contend that defendants are entitled to qualified immunity.

> ### 1.     Section 1983 and Substantive Rights.

From the vague wording of Count Five, it appears that Anderson is predicating that cause of action, at least in part, on a contention that defendants violated statutory rights afforded him under § 1983.[3]  Defendants correctly point out that "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights."  *Almand v. DeKalb County*, 103 F.3d 1510, 1512 (11th Cir. 1997); *see also City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 n.1 (11th Cir. 2002) (same).  Plainly, to the extent that Count Five alleges that defendants violated rights provided to Anderson under § 1983, that claim is not cognizable because § 1983 confers no such substantive rights.  That portion of Count Five must therefore be dismissed for failure to state a claim upon which relief can be granted.

> ### 2.     Section 1983 Claim as to Sheriff Hawsey.

Review of the Amended Complaint does not reveal any basis for holding Sheriff Hawsey liable for any constitutional deprivation that Anderson may have suffered.  Plaintiff does not allege that Sheriff Hawsey was actually present at the time of the September 2003 incident, much less that he joined Deputy Greene in using physical force against Anderson and entering and rummaging around Anderson's home without consent or a warrant.  Nor does the Amended Complaint maintain that Sheriff Hawsey ordered, ratified or approved Deputy Greene's conduct.  At best, the Amended Complaint asserts that Sheriff Hawsey "negligently supervised the Defendant Greene, and [is] responsible for the injuries and damages to the Plaintiff."  (Amended Complaint, ¶ 3.)

Given the barebones nature of the pleadings and plaintiff's failure to respond to the Rule 12(b)(6) motion, it is difficult to fathom the factual or legal basis for plaintiff's claims against Sheriff

---

[3]      In particular, paragraph 23 of the Amended Complaint reads as follows: "Plaintiff avers that Defendants ... violated the constitutional and/or statutory [*sic*] afforded the Plaintiff under the Fourteenth Amendment and/or 42 U.S.C. § 1983 ...."  (*Id.*)

Hawsey in Count Five.  Although this Court will not make plaintiff's counsel's arguments for him, two possible theories of liability seem likely.  First, Anderson may seek to hold Sheriff Hawsey vicariously liable for the actions of Deputy Greene.  Such a theory of liability is not cognizable in § 1983 actions, as a matter of law.  *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003) (same).

Second, Anderson may be attempting to fashion a § 1983 claim against Sheriff Hawsey based on alleged "negligent supervision" of Deputy Greene.  That theory, too, fails as a matter of law.  Under Eleventh Circuit precedent, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.  There is no allegation of the former here.  As to the latter, the requisite "causal connection" can be found where either (a) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (b) "a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (citations omitted).  The Amended Complaint is devoid of allegations that might support holding Sheriff Hawsey liable on any of these bases.[4]

Based on the foregoing analysis, the Court finds that the Amended Complaint's vague,

---

[4]      To the extent that plaintiff might point to Paragraph 26 of the Amended Complaint in asserting otherwise, such an argument cannot succeed.  Paragraph 26 alleges that Sheriff Hawsey "knew or should have known by virtue of past conduct of Greene's propensity for making false charges."  (*Id.*)  However, the Court cannot discern what relationship, if any, this allegation has to the alleged constitutional deprivations, which apparently relate to Deputy Greene slapping plaintiff, invading his home, photographing his belongings, and questioning him without reason.  Besides, as defendants correctly observe, Paragraph 26 is part of Count Six (negligent supervision) and has not been incorporated into or made part of the § 1983 claim found at Count Five.

conclusory allegations against Sheriff Hawsey as to the § 1983 claim fail to satisfy minimum notice pleading requirements, and fail to state a claim upon which relief can be granted.  Defendants' Motion to Dismiss is **granted** as to the Count Five allegations against defendant Sheriff Hawsey.

3.    <i>Qualified Immunity Defense.</i>

When a municipal officer is sued in his individual capacity for money damages based on alleged civil rights violations, he may posit an affirmative defense of qualified immunity.  *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11ᵗʰ Cir. 1995).  The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed.2d 396 (1982).  As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

"[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11ᵗʰ Cir. 2004).[5]  Eleventh Circuit law is clear that this burden rests with the public official, and that failure to satisfy this burden negates the qualified immunity defense.  *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11ᵗʰ Cir. 2004) (explaining that if defendants cannot meet their burden of showing that they were engaged in a discretionary function, they are ineligible for qualified immunity).  In assessing whether an official was engaged in a discretionary function, courts consider whether his acts were of a type that fell within his job responsibilities.  *See id.* at 1265.  In making this inquiry, "[w]e ask whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b)

---

[5]          "Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11ᵗʰ Cir. 2004).  To satisfy this burden, a plaintiff must show that the defendant committed a constitutional violation and that the constitutional right was clearly established at the time the officer did it.  *Id.*

-10-

through means that were within his power to utilize." *Id.*[6]

Here, there are considerable unanswered questions as to whether Deputy Greene was performing a discretionary function during the complained-of events. Based on the record, the Court cannot discern whether Deputy Greene was on duty, what he was doing in Monroe County, why he went to plaintiff's home, why he entered plaintiff's home, why he photographed plaintiff's belongings, why he struck plaintiff, whether investigations in Monroe County were within the scope of his job responsibilities as a Conecuh County Sheriff's Deputy, and the like. Deputy Greene has made no showing on any of these critical issues, much less a sufficient showing to carry his burden of demonstrating that he was performing a discretionary function. Until and unless these facts are developed in discovery and presented in the record, the Court cannot determine whether Deputy Greene was or was not acting within the scope of his discretionary authority.[7]

Because Deputy Greene has not made an adequate showing that he was performing a discretionary function, his Motion to Dismiss the § 1983 cause of action on qualified immunity grounds is **denied**, without prejudice to his ability to interpose that defense again at the Rule 56 stage, if appropriate.

That said, the Court finds it difficult to glean from the vague Amended Complaint exactly how

---

[6]     Law enforcement functions such as arrests have been deemed discretionary functions for qualified immunity purposes. *See, e.g., Crosby*, 394 F.3d at 1332 (sheriff's deputy who arrested plaintiff was engaged in discretionary function because making arrests fell within his official responsibilities); *Burdeshaw v. Snell*, 365 F. Supp.2d 1194, 1198 (M.D. Ala. 2005) ("An on-duty police officer making an arrest is performing a discretionary function.").

[7]     To be sure, defense counsel offers conclusory allegations that Deputy Greene was "on duty and investigating burglaries that had occurred in Conecuh County" (Defendants' Brief, at 6), but there is no record basis for these allegations. The Court cannot simply accept counsel's unadorned representations as evidence. *See Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("[f]actual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient"); *Jordan v. Warehouse Services, Inc.*, 81 F. Supp.2d 1257, 1263 n.10 (M.D. Ala. 2000) (unsworn statement of counsel is not evidence and cannot be considered); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("opinions, allegations, and conclusory statements of counsel do not substitute for evidence").

-11-

Anderson contends Deputy Greene violated his constitutional rights, or exactly what the alleged deprivation was.  In its present form, the Amended Complaint states only that Deputy Greene violated plaintiff's rights "under the Fourteenth Amendment" without explaining which Fourteenth Amendment right or rights are implicated and how Deputy Greene allegedly violated them.  Certainly, the Amended Complaint might be logically construed as stating any number of different constitutional deprivations, as evidenced by defendants' reliance on guesswork throughout their brief as to the precise constitutional deprivation being claimed by Anderson in Count Five.  This defendant should not have to hypothesize as to the constitutional basis for a plaintiff's § 1983 claim, and it is unfair to expect him to prepare a defense in the face of such ambiguity.  Accordingly, plaintiff is hereby **ordered**, on or before **August 26, 2005**, to file a Second Amended Complaint amplifying and explaining the basis of Count Five.  At a minimum, the amendment must identify the particular right or rights that Anderson alleges were violated by Deputy Greene, the constitutional basis or bases for such right(s), and the basic facts underlying such claim.  Failure to comply with this requirement in a timely manner will result in dismissal of this action for failure to prosecute.

### E.  The State Law Claims.

Finally, the Court considers Counts Six and Seven of the Amended Complaint.  Count Six is a state law claim against Sheriff Hawsey for negligent supervision, while Count Seven alleges a state law due process violation.  Both Counts Six and Seven seek compensatory and punitive damages, plus attorneys' fees and costs.  Defendants correctly assert that they are entitled to absolute immunity.

Pursuant to Article I, Section 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity."  *Id.*  In accordance with Section 14's sovereign immunity provisions, courts applying Alabama law have routinely held that sheriffs and deputy sheriffs are executive officers of the State of Alabama who, with a few exceptions, are absolutely immune from suit on state law claims.  *See Sheth v. Webster*, 145 F.3d 1231, 1236-39 (11th Cir. 1998) (recognizing that "absolute sovereign immunity" is afforded to sheriffs and deputy sheriffs under Alabama law, while lesser state officials are not immune for actions taken in bad faith, maliciously or willfully); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("Under Alabama law, sheriffs and

-12-

deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state.").[8]

The only exceptions to state sovereign immunity for a sheriff or deputy are "actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute." *Parker v. Amerson*, 519 So.2d 442, 443 (Ala. 1987). These exceptions manifestly do not apply where a sheriff is being sued for money damages, rather than for injunctive relief. *See Tinney*, 77 F.3d at 383 ("under Article I, § 14, the only exceptions to a sheriff's immunity from suit are actions brought to enjoin the sheriff's conduct," not actions for damages). Plaintiff has not maintained that any of the *Parker* exceptions apply; indeed, he cannot credibly do so, inasmuch as he is plainly suing Sheriff Hawsey and Deputy Greene for money damages, not injunctive relief.

In surveying Alabama law regarding the outer limits of sovereign immunity for sheriffs, the Eleventh Circuit has observed some confusion in Alabama courts, such that there is "no clear answer" as to whether sovereign immunity protects sheriffs or deputies sued in their individual capacities for malicious or intentional wrongdoing. *McMillian v. Johnson*, 101 F.3d 1363, 1364-65 (11th Cir. 1996) (collecting Alabama cases and noting inconsistencies). However, this Court need not be troubled by such uncertainty, because the *McMillian* court, applying *Tinney*, has adopted an unambiguous interpretation of Alabama law, pursuant to which "a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity," even if that claim is based on malicious or intentional wrongdoing. *McMillian*, 101 F.3d at 1365 (reversing trial court finding that sheriff was not entitled to immunity for individual-capacity claims of malicious prosecution, abuse of

---

[8]     Alabama law is clear that the sovereign immunity extended to sheriffs' deputies is coextensive with that provided to sheriffs themselves. *See, e.g., Karrick v. Johnson*, 659 So.2d 77, 79 (Ala. 1995) (deputy sheriffs are immune from suit to the same extent as sheriffs, inasmuch as the deputy sheriff is the alter ego of, and is legally an extension of, the sheriff); *Ex parte Haralson*, 871 So.2d 802, 805 (Ala. 2003) (same).

process and outrage); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430 (11th Cir. 1997) ("Under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity."); *Adams v. Franklin*, 111 F. Supp.2d 1255, 1272-73 (M.D. Ala. 2000) (finding that state law claims seeking monetary damages from sheriff and deputies in individual capacities for assault and battery, negligence, intentional infliction of emotional distress, and outrage were barred by sovereign immunity doctrine, pursuant to *Tinney*); *Hardy v. Town of Hayneville*, 50 F. Supp.2d 1176, 1194 (M.D. Ala. 1999) ("Sheriffs and Deputy Sheriffs sued in their individual capacities have the benefit of sovereign immunity under the Alabama Constitution."); *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1416 (M.D. Ala. 1998) (explaining that even if Alabama state courts suffer confusion as to whether sovereign immunity attaches to sheriff's deputy in individual capacity for claims of intentional or malicious wrongdoing, the *McMillian* and *Tinney* holdings are binding and "a correct statement of Alabama law as far as this court is concerned"); *Flood v. State of Ala. Dept. of Indus. Relations*, 948 F. Supp. 1535, 1549 n. 53 (M.D. Ala. 1996) ("[T]his court is bound by *Tinney*, regardless as to whether *Tinney* is right or wrong under Alabama law.").

Thus, this Court is subject to a binding interpretation of Alabama law under which sheriffs and their deputies are absolutely immune from state law claims in their individual and official capacities, even if they are sued for actions that are malicious, intentional or otherwise outside the scope of their authority. For that reason, the Court finds that Sheriff Hawsey and Deputy Greene, in their individual and official capacities, are entitled to sovereign immunity on Counts Six and Seven, and those causes of action are therefore **dismissed**.

## IV.    Conclusion.

For all of the foregoing reasons, defendants' Motion to Dismiss (doc. 2) is **granted in part,** and **denied in part**. In particular, the Motion is **granted** as to Counts Six and Seven, as well as all portions of Count Five other than the § 1983 claim against Deputy Greene. The following causes of action are hereby dismissed: (i) all claims against Sheriff Hawsey; (ii) Counts Six and Seven; and (iii) the portions of Count Five purporting to bring claims under § 1981(a) and for alleged violation of rights afforded plaintiff under § 1983. Moreover, Counts One through Four were dismissed in state court

-14-

and are no longer pending.

The Motion is **denied** as to the Count Five § 1983 claim against Deputy Greene predicated on alleged violation of the plaintiff's Fourteenth Amendment rights.  Pursuant to the terms of this Order, plaintiff is **ordered**, on or before **August 26, 2005**, to file a Second Amended Complaint amplifying and explaining the basis of Count Five.  At a minimum, the amendment must identify the right or rights that Anderson alleges were violated, their constitutional basis or bases, and the basic facts underlying such claim.[9]  **Failure to comply with this requirement in a timely manner will result in dismissal of this action for failure to prosecute.**  Deputy Greene's responsive pleading to the Second Amended Complaint will be due on or before **September 9, 2005**.

DONE and ORDERED this 16th day of August, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9]     The Second Amended Complaint should be drafted as a complete, freestanding pleading, rather than simply an excerpt.  In other words, the Second Amended Complaint must be a unified, integrated document that can be read in its entirety without reference to the first two iterations of the Complaint.