# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **GERALD ANDERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL NO. 05-0393-WS-M |
| | ) |
| **JOHN GREENE,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is once again before the Court on Rule 12 issues, this time in the form of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. The Motion has been briefed and is ripe for disposition at this time.[1]

**I.   Background.**

This marks the fourth occasion that the Court has been called upon to examine the merits of a motion to dismiss in this case. A brief overview of the procedural history of this action may be beneficial in achieving an expeditious resolution of the pending Motion.

*A.   The State Court Proceedings.*

On August 4, 2004, plaintiff Gerald Anderson filed suit against defendant John Greene and fictitious parties in the Circuit Court of Monroe County, Alabama. The Complaint alleged that Greene, a Conecuh County Deputy Sheriff, committed various state-law torts against Anderson in Monroe County, some five miles from the Conecuh County line. In particular, the Complaint asserted that in September 2003, Deputy Greene entered plaintiff's residence without permission, slapped him "in a

---

[1] Defendant has requested oral argument on his Motion. (Motion, ¶ 7.) After careful review of the extensive written materials submitted, the Court's previous orders addressing many of the legal issues raised here, and all relevant parts of the court file, the Court finds that oral argument would not be of material assistance in resolving the Motion. As such, the request for oral argument is **denied**. *See* Local Rule 7.3 (providing that "the court may in its discretion rule on any motion without oral argument").

rude, hostile and willful manner," "interrogated him without any probable cause," and "took pictures and serial numbers of televisions and guns" belonging to plaintiff. (Complaint, ¶¶ 6, 10, 14, 18.) Based on these allegations, the Complaint enumerated claims for assault and battery, false imprisonment, invasion of privacy and outrage.

On June 8, 2005, Circuit Judge Sam Welch granted Deputy Greene's motion for summary judgment on the state-law causes of action on absolute immunity grounds. Concurrently, however, Judge Welch authorized Anderson to file an amended complaint, including new federal civil rights claims, as well as a new defendant, Conecuh County Sheriff Tracey Hawsey. Based on the state court rulings, Anderson filed an Amended Complaint naming Sheriff Hawsey as an additional defendant and asserting three new causes of action, to-wit: (i) a claim that defendants Greene and Hawsey "violated the constitutional and/or statutory [*sic*] afforded the Plaintiff under the Fourteenth Amendment and/or 42 U.S.C. § 1983 and/or 42 U.S.C. § 1981(a)" (Amended Complaint, ¶ 23); (ii) a negligent supervision claim against Sheriff Hawsey; and (iii) a claim against Greene and Hawsey for violation of Article 1, Section 6, of the Constitution of Alabama, guaranteeing the right to due process of law. Upon filing of the Amended Complaint, defendants removed this action to federal court.

### B.     *The Original Motion to Dismiss.*

Once in federal court, defendants moved to dismiss the Amended Complaint, based on the following grounds, *inter alia*: (a) res judicata; (b) lack of support for § 1981(a) claim; (c) failure to state a § 1983 claim against Sheriff Hawsey; (d) qualified immunity as to § 1983 claims; and (e) sovereign immunity on state-law claims. In an Order (doc. 9) entered on August 16, 2005, the Court agreed with defendants that the Amended Complaint failed to state a claim under § 1981(a) because it did not allege intentional race discrimination. The Court also dismissed plaintiff's § 1983 claims against Sheriff Hawsey, reasoning that Anderson appeared to be proceeding on a theory of respondeat superior but had failed to allege facts tending to show either that Sheriff Hawsey personally participated in the alleged unconstitutional conduct or that there was a causal connection between Sheriff Hawsey's

actions and the alleged deprivation.[2]  Furthermore, Anderson's state-law claims against defendants in their official and individual capacities were deemed foreclosed by principles of sovereign immunity.

The August 16 Order was less favorable to defendants on the res judicata and qualified immunity grounds.  On the former issue, the Court declined to construe Judge Welch's June 8 ruling as a final dismissal with prejudice, inasmuch as the state court had authorized Anderson to file new claims against Deputy Greene arising from the same transaction or occurrence in the same breath that he dismissed Anderson's initial claims against Deputy Greene.  On the latter issue, the Court found substantial questions as to whether Deputy Greene was acting in the scope of his discretionary authority at the time of the complained-of incidents, all of which precluded a finding of qualified immunity at this nascent stage of the litigation.[3]

That said, the Court also determined that the Amended Complaint was impermissibly ambiguous in delineating the form and nature of Anderson's constitutional claim against Deputy Greene.  For that reason, the August 16 Order directed Anderson to file a second amended complaint,

---

[2]  Anderson filed a Motion to Alter or Amend (doc. 13) the portion of the August 16 Order dismissing his claims against Sheriff Hawsey.  In support of that motion, Anderson contended that his claims against Sheriff Hawsey were "open and obvious and should have not been dismissed." (Motion to Alter, at ¶¶ 1, 2.)  The Court disagreed, reasoning that plaintiff had failed to make an adequate showing to justify reconsideration of the August 16 Order and that, in any event, the Amended Complaint failed to state a § 1983 claim against Sheriff Hawsey because there was no allegation of a causal connection between Sheriff Hawsey's actions and the alleged constitutional deprivation.  Plaintiff's Motion to Alter or Amend was denied via Order (doc. 18) dated September 14, 2005.

[3]  Deputy Greene responded to these aspects of the August 16 Order by filing his own Motion to Alter, Amend or Vacate (doc. 11).  As grounds for this request, Deputy Greene submitted Judge Welch's written order dated July 8, 2005 (a full month after the ruling in question), which he claimed established (a) that res judicata applies because a final judgment was granted in his favor, and (b) that he was acting within the scope of his discretionary authority at the time of these events, barring relitigation of that issue.  The Court rejected these arguments.  In an Order (doc. 15) dated August 26, 2005, the undersigned found that the state court order was not new evidence and not a proper basis for reconsideration, that the written state court order in no way undermined the undersigned's reasons for finding that res judicata does not apply, and that the state court order could not decisively resolve the "discretionary function" test for qualified immunity eligibility because that legal question had not been before Judge Welch.

identifying the particular right or rights that he alleges were violated by Deputy Greene, the constitutional bases for such right(s), and the basic facts underlying each claim.[4]

### C. *The Second Amended Complaint.*

On August 26, 2005, Anderson filed his Second Amended Complaint (doc. 14). That pleading alleged that in September 2003 Deputy Greene "invaded the home of Plaintiff in Monroe County, which is outside his Conecuh County jurisdiction." (*Id.*, ¶ 3.) Such "invasion" was allegedly performed with no search warrant, no arrest warrant, no probable cause, and no hot pursuit. (*Id.*, ¶¶ 4-6.)[5] During the course of such invasion, it is alleged, Deputy Greene "assaulted the Plaintiff by striking him with his hands," then detained Anderson and forbade him from leaving the premises. (*Id.*, ¶¶ 7-8.) The Second Amended Complaint further alleges that Deputy Greene "ransacked and otherwise moved and manipulated the Plaintiff's property and illegally searched the home of the Plaintiff." (*Id.*, ¶ 9.) Anderson maintains that Deputy Greene's course of conduct violated his Fourth, Fifth and Fourteenth Amendment rights, including the right to be secure in his home, the right to due process of law and the right to equal protection of the law; and that it further violated Alabama laws prohibiting assault and battery, burglary, disorderly conduct, criminal mischief and false imprisonment. (*Id.*, ¶¶ 10, 11.) Anderson alleges that Deputy Greene acted with knowledge that his conduct violated the law. (*Id.*, ¶ 12.)

Defendant responded to the Second Amended Complaint by filing another Motion to Dismiss, which is now before the undersigned for disposition.

---

[4] Defendant repeatedly characterizes the Second Amended Complaint as violative of these instructions. Anderson's amended pleading does not present as much detail and clarity as one might hope; however, with one exception discussed *infra*, it is in substantial compliance with the filing requirements outlined in the August 16 Order.

[5] The Second Amended Complaint does not allege whether Deputy Greene obtained consent to enter plaintiff's home; however, the initial Complaint repeatedly alleges that Deputy Greene went into Anderson's residence without permission. (Complaint, ¶¶ 10, 14, 18.) The Court assumes for purpose of this Order that plaintiff stands by that factual allegation, and that its omission from the Second Amended Complaint was a mere inadvertent oversight.

## II. Legal Standard.

As has been explained in previous orders, on a motion to dismiss the Court must view the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed.R.Civ.P. Moreover, the Court must, "at this stage of the litigation, . . . accept [plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Stephens v. HHS*, 901 F.2d 1571, 1573 (11th Cir. 1990); *cf. South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) (conclusory allegations and unwarranted deductions of fact are not deemed true on a motion to dismiss). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. A plaintiff must meet only an "exceedingly low" threshold to withstand a Rule 12(b)(6) motion. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).

## III. Analysis.

Deputy Greene seeks dismissal of the Second Amended Complaint on the following five grounds: (i) res judicata and collateral estoppel; (ii) inapplicability of the Fifth Amendment due process clause; (iii) absence of facts to support the equal protection claim; (iv) failure to meet heightened pleading standard for § 1983 action implicating qualified immunity; and (v) qualified immunity.[6]

---

[6] In response to the Motion to Dismiss, Anderson argues that defendant is not entitled to relief through defenses relating to Eleventh Amendment immunity, the intracorporate conspiracy doctrine, *Heck v. Humphrey*, and sovereign immunity. (*See* Amended Response (doc. 23).) Because defendant has not asserted any of these defenses as grounds for his Motion, the Court need not and shall not explore their merits here. Also, the Court notes that Anderson's response postulates that the Motion to Dismiss is premature because "jurisdictional issues are intertwined with the merits." (*Id.* at 2.) After careful review of plaintiff's argument on this point, the Court finds no valid reason to defer

### A.     *Res Judicata / Collateral Estoppel.*

As a first line of attack, Deputy Greene rehashes his well-traveled res judicata argument. This Court has already considered and rejected it twice. No constructive purpose would be served by reiterating – for a third time – the bases for the Court's determination that the doctrine of res judicata is inapplicable here. For the reasons set forth in detail in the Orders dated August 16, 2005 and August 26, 2005, the Motion to Dismiss is **denied** insofar as it rests on principles of res judicata.[7]

Alternatively, defendant argues that collateral estoppel applies to certain facts found by the state court and urges the Court to take those facts as established in ruling on the Motion. In particular, Judge Welch's Order of July 8, 2005, included the following potentially relevant findings of fact:[8] (a) Deputy

---

analysis of the legal sufficiency of the Second Amended Complaint until after the completion of discovery. Here, any jurisdictional issues are not inextricably bound up with the merits and the purported legal defects identified by defendant's Motion can and should be resolved now, without awaiting the discovery process. The timing of defendant's Motion to Dismiss is appropriate under the Federal Rules of Civil Procedure and the specific circumstances of this case. Accordingly, the Motion to Dismiss is not premature, and it will be considered at this time.

[7]     At the risk of redundancy, the Court stresses that it parts company with Deputy Greene as to the legal significance of Judge Welch authorizing Anderson to file an amended complaint immediately after granting Deputy Greene's motion for summary judgment. According to defendant, the state court order authorizing the amendment was "clear error," a legal nullity that may be discarded without a second thought. (Defendant's Brief (doc. 17), at 4.) The Court does not share the view that this state court order may be casually overruled by a parallel federal court, particularly when a perfectly logical explanation exists that would give effect to both orders. The question is whether Judge Welch intended to grant a final judgment dismissing all claims against Deputy Greene. Because defendant removed this action to federal court instead of seeking clarification in state court, we will never know what Judge Welch's thought processes were. Nonetheless, his act of green-lighting Anderson's attempt to file new claims against Deputy Greene immediately after dismissing the old claims is compelling evidence that the state court did not intend to grant a final dismissal with prejudice in Deputy Greene's favor, but that he rather intended only to grant a dismissal with leave to amend. The Court is not swayed by the written order signed by Judge Welch a month after the fact, particularly where such order made no reference to the amendment.

[8]     To be clear, what Judge Welch's written order characterized as "Findings of Fact" was actually a recitation of facts in the summary judgment record construed in the light most favorable to the nonmovant, Anderson. It does not appear that the state court made credibility determinations or set forth binding, final factual determinations that a jury would have been obliged to accept or adopt at trial.

Greene was employed as Chief Investigator of the Conecuh County Sheriff's Department and was not employed by the Monroe County Sheriff's Department; (b) Deputy Greene received information from Anderson's brother (an inmate in the Conecuh County Jail) that Anderson had purchased stolen items from a person named "Possum"; (c) Deputy Greene and a colleague traveled in a Sheriff's Department vehicle to Anderson's home in Monroe County; (d) Deputy Greene neither notified nor obtained permission from the Monroe County Sheriff's Department for this foray into Monroe County; (e) Deputy Greene was on duty at the time; and (f) Deputy Greene entered Anderson's home, took photos of his property without his consent, checked a rifle to see if it had been stolen, and spoke to Anderson about the elusive Possum. Defendant asserts that these facts must be accepted as true at this time because of collateral estoppel.

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003). "To successfully invoke collateral estoppel, a party must demonstrate that: (1) the issue at stake in a pending action is identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003). Although he eschews analysis and application of each factor, Deputy Greene argues that these elements are satisfied, inasmuch as the foregoing facts were fully and fairly litigated in the state court proceedings, and were actually decided by Judge Welch on summary judgment.

Anderson's opposition brief is largely silent on the applicability of collateral estoppel in this case. At most, he contends that collateral estoppel principles do not apply to Judge Welch's factual findings because that decision was not a "decision on the merits of the claims." (Amended Response, at 17-21.) Anderson offers no authority for the novel proposition that an order granting summary judgment on immunity grounds is not considered "on the merits" for preclusion purposes. Even if he

had, a ruling on the merits is not a prerequisite to application of collateral estoppel. Rather, where an issue has been fully and finally decided, the doctrine of collateral estoppel applies, irrespective of whether that decision has been packaged in a ruling on the merits.

There may well be valid counterarguments to Deputy Greene's invocation of collateral estoppel with regard to the "Findings of Fact" set forth in Judge Welch's Order. But plaintiff has not identified them. This Court will not articulate plaintiff's position for him. *See Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ( "[T]he court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her."). In the absence of any meritorious objection by Anderson to the use of collateral estoppel for the findings of fact contained in Judge Welch's Order, the Court will accept those factual findings as true for purposes of this Order.

### B. *Applicability of the Fifth Amendment Due Process Clause.*

Defendant's next argument is that plaintiff's claims should be dismissed to the extent that Anderson alleges violations of his Fifth Amendment due process rights. In this regard, defendant asserts that the Fifth Amendment's due process clause does not extend to state and local governments, but is instead confined to the federal government. (*See* Defendant's Brief, at 6.) If Anderson were seeking to bring a separate, distinct Fifth Amendment due process claim against Deputy Greene, then defendant's position would have merit. *See Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials."); *Dowdell v. Chapman*, 930 F. Supp. 533, 542 (M.D. Ala. 1996) ("The Fifth Amendment's Due Process Clause applies only to the federal government."). However, a fair construction of this pleading reveals that Anderson is not bringing a separate Fifth Amendment due process claim. To the contrary, the Second Amended Complaint invokes both the Fifth and the Fourteenth Amendments. Inasmuch as many aspects of the Fifth Amendment apply to state and local governments through the Fourteenth Amendment, the Court perceives no improprieties in plaintiff's use of the common pleading convention of reciting both amendments. *See generally Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 121-23, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (applying

the Fifth Amendment to the States through the Fourteenth Amendment); *Corn v. City of Lauderdale Lakes*, 95 F.3d 1066, 1069 n.2 (11th Cir. 1996) ("The Fifth Amendment's protections apply to the states through the Fourteenth Amendment.").

There being no suggestion in the Second Amended Complaint that Anderson is endeavoring to bring a distinct Fifth Amendment due process claim against Deputy Greene, and it not being improper for Anderson to recite the Fifth and Fourteenth Amendments in tandem, defendant's Fifth Amendment objection is unavailing. No Rule 12(b)(6) relief is warranted on this basis.

### C. *Equal Protection Claim.*

In general, to establish an equal protection claim, a plaintiff must show that he is similarly situated to others who received more favorable treatment, and that his adverse treatment was based on some constitutionally protected interest such as race. *See Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *see also Henniger v. Pinellas County*, 7 F. Supp.2d 1334, 1339 (M.D. Fla. 1998) (finding that elements of equal protection claim include differential treatment from others similarly situated, and intentional discrimination). That said, the Supreme Court has recognized "successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *but see Hicks v. Jackson County Com'n*, 374 F. Supp.2d 1084, 1094 (N.D. Ala. 2005) (advocating caution in applying *Olech* because "unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors").[9] In *Olech*'s wake, then, a plaintiff raising an equal protection claim must still show intentional differences in treatment from others

---

[9] Deputy Greene assumes that Anderson's equal protection claim is predicated on the theory that Anderson "was treated in a racially discriminatory manner," and criticizes the Second Amended Complaint for failing to allege the race of the parties. (Defendant's Brief, at 7.) But the Second Amended Complaint nowhere suggests that Anderson's equal protection claim hinges on racially disparate treatment, and *Olech* confirms that equal protection claims are not confined to race-based claims. As such, there was nothing inherently defective in Anderson's failure to plead his race.

similarly situated to him.

Plaintiff has not responded to the equal protection aspect of the Motion to Dismiss. Moreover, review of the Second Amended Complaint reveals that his equal protection allegations are plainly lacking. Anderson has not indicated that anyone is similarly situated to him, much less identified those persons. Nor has he explained the manner in which he believes he was subjected to disparate treatment (*e.g.*, because of his race, on an *Olech*-type basis, etc.). As a result, a defendant reading the Second Amended Complaint is afforded no reasonable information about the theory animating the equal protection claim, or even its factual basis. This result runs directly counter to basic pleading requirements, as well as to this Court's instructions to Anderson in preparing and submitting his Second Amended Complaint. In light of these glaring inadequacies, and in the absence of any response by Anderson to defendant's challenge to the equal protection claim, the Motion to Dismiss is **granted** as to that cause of action. *See generally Jones*, 279 F.3d at 947 (dismissing equal protection claim when even liberal interpretation of complaint did not reveal any factual basis for equal protection claim); *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367-69 (dismissing equal protection claims where complaint failed to allege sufficiently that defendant treated plaintiff differently than similarly situated persons). Plaintiff's Fourteenth Amendment equal protection claim is therefore **dismissed**.

### D.  *Heightened Pleading Requirement.*

As a fourth basis for the Motion, Deputy Greene maintains that the Second Amended Complaint flunks the applicable heightened pleading threshold. Under clear Eleventh Circuit precedent, a heightened pleading requirement attaches to § 1983 claims involving qualified immunity, such that "a § 1983 plaintiff [must] allege with some specificity the facts which make out its claim. ... Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims." *GJR*, 132 F.3d at 1367 (citations omitted); *see also Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing with approval authority from other jurisdictions holding that complaint must include specific, non-conclusory allegations of fact enabling district court to determine that those facts, if proved, will overcome defense of qualified immunity); *but cf. Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 838 (11th

Cir. 2004) (rejecting notion that a heightened pleading standard in § 1983 actions applies where qualified immunity is not in play as a defense).

Upon review of the Second Amended Complaint, the Court is satisfied that it goes beyond "mere conclusory notice pleading" and that it alleges "with some specificity the facts which make out [Anderson's] claim," as required by Eleventh Circuit precedent. *Gonzalez*, 325 F.3d at 1235; *GJR*, 132 F.3d at 1367. Although Deputy Greene is correct that Anderson has not pleaded the factual predicate of his claims with as much detail as he possibly could, that is not the governing standard. Instead, the inquiry is whether the factual allegations set forth in the Second Amended Complaint are sufficiently specific to facilitate a determination of whether those facts, if proved, can overcome a defense of qualified immunity. The Court finds that they are. (*See* § III.E.2., *infra*.) Accordingly, defendant's Motion to Dismiss for failure to satisfy heightened pleading requirements is **denied**.[10]

### E.     *Qualified Immunity.*

Where, as here, a government official is sued in his individual capacity for money damages based on alleged civil rights violations, he may posit an affirmative defense of qualified immunity. *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir. 1995). The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed.2d 396 (1982). As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

---

[10]     To accept defendant's position on this point would logically result in an order dismissing plaintiff's claims with leave to replead. If the parties' previous litigation tactics in this matter are any guide, Anderson would file a third amended complaint, Deputy Greene would file another motion to dismiss, the parties would engage in another round of briefing, and this Court would once again be asked to rule on the sufficiency of Anderson's pleading. This being the fourth iteration of briefing and ruling on motions to dismiss in this case, the Court has no appetite to invite a fifth, and suspects that doing so would not serve the best interests of any litigant herein.

### *1.     The "Discretionary Function" Element.*

"[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). This burden rests with the public official, and failure to satisfy it negates the qualified immunity defense. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (explaining that if defendants cannot show that they were engaged in a discretionary function, they are ineligible for qualified immunity). In assessing whether an official was engaged in a discretionary function, "[w]e ask whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1265.

In its Orders dated August 16, 2005 and August 26, 2005, the Court has twice rejected Deputy Greene's attempts to satisfy the "discretionary function" threshold. All that has changed this time around is that defendant has successfully argued that principles of collateral estoppel render Judge Welch's findings of fact established for purposes of this analysis. The relevant facts are that Deputy Greene, while on duty for the Conecuh County Sheriff's Department, traveled in a Conecuh County Sheriff's Department patrol car from his duty station in Conecuh County to Anderson's home in Monroe County for the purpose of investigating thefts that had occurred in Conecuh County, all without notifying or requesting the assistance of Monroe County authorities. These facts may demonstrate that Deputy Greene was pursuing a legitimate job-related function, but they plainly do not show that he did so through means that were within his power to utilize. In particular, defendant has made no legal showing that he was empowered to travel into a neighboring county to investigate alleged crimes within Conecuh County. Although neither side has briefed this issue to any meaningful degree, the law appears unfavorable to Deputy Greene.

Pursuant to Ala. Code § 36-22-3(4), Alabama sheriffs have the duty "*in their respective counties*, by themselves or deputies, to ferret out crime, to apprehend and arrest criminals and, *insofar as within their power*, to secure evidence of crimes *in their counties*." *Id.* (emphasis added). A plain reading of the statute suggests that the authority of sheriffs – and hence of the deputies

who serve under them – to ferret out crime and secure evidence is confined to their respective counties. Defendant has presented no authority or argument that might support any other construction of § 36-22-3(4).[11] Moreover, in the arrest context, the Alabama legislature has seen fit to carve out specific narrow exceptions to the general geographic limitation on sheriff's deputies' authority. *See* Ala. Code § 15-10-11 (providing that "[a]ny lawful officer, having a warrant of arrest issued by a municipal court to execute, may pursue the defendant into another county and, on obtaining a signed endorsement on the warrant by an officer of that county ... may summon persons to assist him in making the arrest, and exercise the same authority as in his own county"); *Raughley v. State*, 398 So.2d 414, 415 (Ala.Crim.App. 1981) (recognizing "general rule restricting a deputy's arrest authority to his own county," subject to certain statutory exceptions); *Boswell v. State*, 19 So.2d 94, 95 (Ala.App. 1944) ("In the absence of a statute the general rule is that a peace officer when acting without a warrant may arrest in his official capacity only within the limits of the geographical or political sub-division of the State of which he is an officer."). The Court is aware of no corresponding statutory exceptions for investigation of crimes in neighboring counties. For that reason, on the evidence and argument presented at this time, the Court cannot find that Deputy Greene was performing job-related functions through means that were within his power to utilize during his sojourn into Monroe County in search of

---

[11] To the contrary, authorities in several other states have reached similar conclusions regarding the geographic reach and scope of a sheriff's authority in their jurisdictions. *See Lewis v. State*, 15 S.W.3d 250, 255 (Tex.App.-Texarkana 2000) ("Generally, both common law and statutory law limit a peace officer's authority to his own geographical jurisdiction."); *Hayes v. Parkem Indus. Services, Inc.*, 598 So.2d 1194, 1197 (La.App. 3 Cir. 1992) (because "a sheriff's jurisdiction and authority to act is limited to his parish, it stands to reason that he has no jurisdiction or authority to act outside his parish"); *De Salvatore v. State*, 163 A.2d 244, 248 (Del.Supr. 1960) ("in the absence of statutory or constitutional authority, peace officers, including constables, cannot act outside of the territorial limits of the body from which they derive their authority"); *Kapson v. Kubath*, 165 F. Supp. 542, 546 (W.D. Mich. 1958) ("It is a well-established rule that the power and authority of a county sheriff are limited to the confines of his county and that when he exceeds that jurisdiction he is acting as a private citizen."); *State ex rel. Penrod v. French*, 51 N.E.2d 858, 863 (Ind. 1943) ("It is true that in the absence of statute the power of a sheriff and his deputy is limited to their county.").

stolen property.[12] This shortcoming implies that Deputy Greene is unable to show that he was performing a discretionary function, and that he is therefore unable to satisfy the minimum threshold for eligibility for qualified immunity.

### 2. *The Clearly Established Element.*

Even assuming that Deputy Greene had made an adequate showing on the discretionary function criterion, his bid for qualified immunity would still be denied at this time. "Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). In this context, courts examine whether the defendant's conduct "violated a clearly established constitutional right" of which a "reasonable government official would have been aware." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001); *see also Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005) (official performing discretionary function is barred from qualified immunity if evidence in light most favorable to plaintiff shows that official's conduct violated clearly established constitutional right). "A constitutional right is clearly established if controlling precedent has recognized the right in a concrete and factually defined context." *Chesser*, 248 F.3d at 1122 (citation omitted); *see also Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1305 (11th Cir.

---

[12] In reaching this conclusion, the Court considers and rejects two potential arguments from defendant. First, to the extent that Deputy Greene suggests that Judge Welch's Order shows that he was engaged in a discretionary function, such a contention must fail. As the Court has explained in previous orders, Judge Welch was examining whether Deputy Greene was carrying out his duties as a Conecuh County Sheriff's Deputy for purposes of evaluating a sovereign immunity defense. He did not have occasion to apply the "discretionary function" test of qualified immunity. Those two questions are very different, and a determination in defendant's favor as to the former neither implies nor necessitates an analogous result as to the latter. Second, the Court cannot agree with defendant's contention that the discretionary function test is satisfied because plaintiff has not presented enough evidence to satisfy the heightened pleading standard. (Defendant's Brief, at 11-12.) The Second Amended Complaint, coupled with the factual findings credited from Judge Welch's ruling, provide an ample factual backdrop to assess whether Deputy Greene was engaged in a discretionary function. The problem facing the Court is not insufficient factual development by plaintiff, but rather insufficient legal development by defendant of authorities and arguments tending to show that a sheriff's deputy's investigatory activities outside of his territorial jurisdiction can satisfy the two-pronged discretionary function threshold.

2005) ("A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent.").

The conduct of which Deputy Greene is accused in the Second Amended Complaint plainly implicates clearly established constitutional rights. Anderson alleges that Deputy Greene "invaded" his home without probable cause, without a search warrant, without an arrest warrant, and in the absence of exigent circumstances. Anderson further alleges that Deputy Greene physically struck him, detained him, and "ransacked" his home. Given the exhaustive Fourth Amendment jurisprudence governing searches and seizures, it borders on absurdity for Deputy Greene to assert that he lacked "fair warning" that the conduct of which he is accused is unlawful. *See, e.g., United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000) ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."); *Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003) ("A warrantless entry into a suspect's home is presumed to be an unreasonable violation of the Fourth Amendment.").

Deputy Greene attempts to rebut such abundant black-letter authority by insisting that there was "an arguable reasonable suspicion to approach and question the Plaintiff and examine his property" because a firearm was involved and there was some reason to believe that plaintiff might have purchased stolen items. (Defendant's Brief, at 15.) Certainly, "[t]o receive qualified immunity protection, an officer need not have actual probable cause but only 'arguable probable cause.'" *Holmes*, 321 F.3d at 1079 (citations omitted). But the record before the Court does not reveal any arguable probable cause to "invade" plaintiff's home.[13] Even if it did, contrary to defendant's

---

[13] Nothing in Judge Welch's findings or the Second Amended Complaint suggests that Deputy Greene knew or had reason to believe that there was stolen property in Anderson's house, much less stolen firearms. At most, the record shows that an incarcerated informant (whose reliability is not established) told Deputy Greene that Anderson had purchased stolen items from Possum. In its current state, the record does not reveal that Deputy Greene had any information or any reason to believe that Anderson was maintaining stolen items in his home. For example, there is no indication that the informant notified Deputy Greene that he had recently observed such stolen items in Anderson's home. The arguable probable cause threshold may have existed, but the fragmentary record at this very early stage of the lawsuit precludes any findings on that issue without further factual development through discovery.

suggestion the law is clearly established that probable cause, without more, is not a sufficient basis for a warrantless search of a home.  The law in this Circuit has long been that a warrantless search of a home is permissible only in the presence of "both probable cause and exigent circumstances." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991); *see also United States v. Forker*, 928 F.2d 365, 370 n.2 (11th Cir. 1991) ("It is now clear that warrantless arrests in a suspect's home may be effected only under exigent circumstances.").  Defendant has offered not a whiff of evidence of the requisite exigent circumstances that would have needed to accompany his arguable probable cause for the search of Anderson's home to be compliant with clearly established law.[14]

In short, the Court readily finds that the allegations of the Second Amended Complaint, if proven, could establish that Deputy Greene's conduct violated clearly established law.  Dismissing this

---

[14]  Likewise, the Court cannot conclude on this record that Deputy Greene's alleged acts of "assault[ing] the Plaintiff by striking him with his hands" and of detaining Anderson did not violate clearly established law.  On the former point, defendant argues that the contact was *de minimis*.  Without further development, the record cannot support this characterization.  Even if could, the case cited by defendant, *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), does not announce a blanket rule that some moderate amount of force is always insufficient to trigger an actionable constitutional claim; to the contrary, *Nolin* explicitly recognizes cases "that involve[] arrests without probable cause in which **any use of force was inappropriate**." *Id.* at 1258 (emphasis added).  Without more information as to the circumstances under which physical contact was made, the Court cannot agree that Deputy Greene did not violate any clearly established constitutional norms by striking Anderson.  As to the alleged detention, Deputy Greene argues that it was permissible as a *Terry* stop.  But a *Terry* stop is limited to "a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).  On the record before the Court, there is no indication that Deputy Greene harbored any reasonable suspicion that Anderson had committed or was about to engage in any criminal activity.  At most, Deputy Greene had received (perhaps unreliable, stale and/or speculative) information from an incarcerated individual that Anderson had purchased stolen property.  That, in and of itself, is not a crime.  *See* Ala. Code § 13A-8-16 (a person commits crime of receiving stolen property only if he does so "knowing that it has been stolen or having reasonable grounds to believe it was stolen").  On this record, there is no basis for a conclusion that Deputy Greene had any reason to think that Anderson had engaged in any criminal conduct; therefore, there is no record basis for concluding that he was justified in conducting a *Terry* stop.  There are also questions as to whether the duration and circumstances of the stop were within the borders of *Terry*.  Again, on this record, the Court cannot say that Deputy Greene's conduct as alleged in the Second Amended Complaint did not run afoul of clearly established law.

case on the basis of qualified immunity is therefore manifestly inappropriate at this time.

### IV.     Conclusion.

For all of the foregoing reasons, the Court finds that the Motion to Dismiss (doc. 16) is due to be, and the same hereby is, **granted in part** and **denied in part.** The Motion is **granted** as to plaintiff's Fourteenth Amendment equal protection claim, and such claim is **dismissed without prejudice** on grounds that it was inadequately pleaded. In all other respects, the Motion is **denied**.

DONE and ORDERED this 10th day of November, 2005.

                                              s/ WILLIAM H. STEELE  
                                              UNITED STATES DISTRICT JUDGE